# EXHIBIT
# 2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

CASA de Maryland, Inc., et al.,

                      Plaintiffs,

    v.

DONALD J. TRUMP, in his official
capacity as President of the United States,
et al.,

                      Defendants.

Civil Action No.

### DECLARATION OF ANGEL AGUILUZ

I, Angel Aguiluz, upon my personal knowledge, hereby submit this declaration pursuant to 28 U.S.C. § 1746 and declare as follows:

1.      I am a resident of Silver Spring, Maryland, and a member of CASA de Maryland, Inc. (CASA).

2.      I was born on January 2, 1997, in Tegucigalpa, Honduras.

3.      In June 2005, when I was eight years old, my parents brought me, along with my two older brothers and half-brother, to the United States.  My family came to the United States seeking medical care for my older brother, who suffered a serious spinal injury in a car accident. A tourist visa allowed me to enter the country legally at that time, but I overstayed that visa, rendering my presence in the United States unlawful.

4.      President Barack Obama announced the creation of the Deferred Action for Childhood Arrivals (DACA) program in June 2012, enabling undocumented immigrants who were brought to the United States as children to continue living here without fear of being deported.

5.      I obtained DACA protection in 2013 and have maintained my DACA status continuously ever since.

6.      In June 2016, I obtained advance parole from the U.S. Citizenship and Immigration Services (USCIS) before leaving the United States to visit my ailing grandmother in Honduras.  Having obtained advance parole before my departure, I was able to re-enter the United States lawfully after my visit to Honduras.

7.       It is my understanding that because of this lawful entry in 2016, I am not barred by the Immigration and Nationality Act (INA) from obtaining lawful-permanent-resident (LPR) status.

8.      I intend to apply for adjustment of status in the future.

9.      I am currently enrolled as a student at Montgomery College, where I am pursuing an associate's degree in mathematics.  Upon completion of my associate's degree, I hope to pursue a bachelor's degree in physics.  I would most like to attend the University of Maryland, College Park.

10.     I live with my mother in a basement apartment.  She and I split rent 50-50, but because I pay my own tuition, she covers a little more rent when I am in school.

11.     To support myself, I work part-time at a Panera Bread restaurant and, as hours are available, as an interpreter for Ad Astra, Inc.

12.     My father returned to Honduras around 2011, and since then my mother has had to be a single parent for myself and my brothers.  My brothers, my half-brother, and I each send him approximately $100 per month to help support him, since it is so difficult to find work in Honduras.

13.     I am active in my community, participating in grassroots organizing with CASA

2

and with United We Dream.  I attend church at Saint Camillus Perish, where I participated in and led a weekend youth retreat program called Seeking Each Other and Receiving Christ's Hand (S.E.A.R.C.H.).  Along with my family, I help build a nativity scene at St. Camillus each year.

14.     I am concerned that the Public Charge Rule recently issued by the U.S. Department of Homeland Security (DHS) will prevent me from adjusting status in the future.  It is my understanding that, under the Rule, noncitizens can be barred from adjusting status based on a prediction that they are likely to receive even a small amount of public benefits at any point in the rest of their lives.  I am familiar with the various factors that the Rule specifies as "positive factors" and "negative factors" as part of the standard that it establishes for public-charge determinations.

15.     In 2018, my gross income was approximately $19,500, which is more than 125 percent of the Federal Poverty Guidelines for a household of one, but less than 250 percent. Accordingly, if I underwent a public-charge determination today, my income would not be considered a "heavily weighted positive factor."

16.     I have some financial liabilities, which are considered "negative factors" under the Public Charge Rule.  My car is financed at $9,000 over 5 years.  I also have credit-card debt.

17.     My credit score is 561, which is considered poor.

18.     I do not have health insurance.

19.     I do not have savings or any major non-liquid assets.

20.     Given my attributes, I am uncertain how to assess my likelihood of receiving a favorable public-charge determination when I attempt to adjust status.

21.     This uncertainty makes me reluctant to accumulate any additional attributes that could be considered "negative factors" in public-charge determinations.

22.     For example, I am planning to apply for a bachelor's degree program this academic year.  Because of the Public Charge Rule, I am less likely to take out student loans or to take on other debt, which would be considered a financial liability in a public-charge determination.  I also worry about the effect that going to school full-time, and therefore working less, would have on my assets and resources for purposes of a public-charge determination.

23.     Right now I am only considering going to public colleges, like the University of Maryland, in part because I am concerned about how the massive debt I would take on attending a private school.  I dream about being able to attend a school like Johns Hopkins University, or even an Ivy League college, but those dreams seem unobtainable when doing so would hurt my chances of getting permanent immigration status in the future.

24.     Even though I love my father, and want to make sure that he has a good life in Honduras, I worry that providing additional financial support to my father could risk making him a member of my "household," as defined by the Public Charge Rule.  Under the Rule, having an increased family size would be held against me by immigration officials in assessing my "family status" and "assets, resources, and financial status."

25.     For similar reasons, I am worried about accepting too much financial support from my mother while I am in school.

26.     The Public Charge Rule will even impact my decisions about when and how to start a family.  I've always wanted to get married and have my own family, but this Rule makes that prospect more difficult.  Even if I were to get married, the Public Charge Rule would factor into my decisions about whether to have children – and if I were, how many children to have.  I would always be aware that increasing my "household size" could mean that I will be denied a green card one day.

4

27.     Under the Public Charge Rule, I understand that immigration officials can consider evidence beyond what is specified in the Rule in determining whether noncitizens like me are likely to accept public benefits in the future.  That means that I must consider the effect that all of my financial and lifestyle decisions might have on my ability to one day finally obtain permanent legal immigration status in the United States. Basically, I have to live my life under a cloud, always thinking "Is this going to hurt my immigration prospects in the future?"  Even if I never receive any type of public benefits in my life, this Rule, if it is allowed to go into effect, will have dramatic consequences on all aspects of my life for years to come.

28.     The Public Charge Rule therefore will continue to have a significant negative impact on me and my available life choices, as I attempt to maximize my chances of being able to obtain LPR status in the future.


I hereby declare under penalty of perjury that the foregoing is true and correct.


DATED:  September 13 , 2019

_____
Angel Aguiluz

5