# EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| CASA de Maryland, Inc., et al.,<br><br>    Plaintiffs,<br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, et al.,<br><br>    Defendants. | Civil Action No. |

## DECLARATION OF MONICA CAMACHO PEREZ

I, Monica Camacho Perez, upon my personal knowledge, hereby submit this declaration pursuant to 28 U.S.C. § 1746 and declare as follows:

1. I am a resident of Baltimore, Maryland, and a member of CASA de Maryland, Inc. (CASA).

2. I was born on August 26, 1994, in Mexico.

3. In April 2002, at the age of seven, my mother brought me to the United States. We crossed the border in Arizona and made our way to Baltimore to join my father, who had been living there since 2000, and my older siblings, who joined him there in 2001.

4. President Barack Obama announced the creation of the Deferred Action for Childhood Arrivals (DACA) program in June 2012, enabling undocumented immigrants who were brought to the United States as children to continue living here without fear of being deported.

5. I applied for DACA protection in 2012, received it the following year, and have maintained my DACA status continuously ever since.

6. I visited family members in Mexico in November 2016. Before leaving, I obtained advance parole from the U.S. Citizenship and Immigration Services (USCIS). Having obtained advance parole before my departure, I was able to re-enter the United States lawfully.

7. It is my understanding that because of this lawful entry in 2016, I am no longer barred by the Immigration and Nationality Act (INA) from obtaining lawful-permanent-resident (LPR) status.

8. I intend to apply for adjustment of status in the future.

9. I am currently enrolled as a student at Baltimore City Community College, where I am pursuing an associate's degree. Upon completion of my associate's degree, I hope to pursue a bachelor's degree in education.

10. To support myself, I work as an English for Speakers of Other Languages (ESOL) instructor in the Baltimore City Public Schools.

11. I am active in my community. I participate in grassroots organizing led by CASA, and I help newcomer parents whose children are enrolled at my school get acclimated to life in the United States.

12. I am concerned that the Public Charge Rule recently issued by the U.S. Department of Homeland Security (DHS) will prevent me from adjusting status in the future. It is my understanding that, under the Rule, noncitizens can be barred from adjusting status based on a prediction that they are likely to receive even a small amount of public benefits at any point in the rest of their lives. I am familiar with the various factors that the Rule specifies as "positive factors" and "negative factors" as part of the standard that it establishes for public-charge determinations.

13. In 2018, my gross income was approximately $26,400, which is more than 125

percent of the Federal Poverty Guidelines for a household of one, but less than 250 percent. Accordingly, if I underwent a public-charge determination today, my income would not be considered a "heavily weighted positive factor."

14. Although I currently have health insurance through the Baltimore City Public Schools, I could become uninsured if I am unable to continue working as an ESOL teacher while pursuing a bachelor's degree.

15. I have some financial liabilities, which are considered "negative factors" under the Public Charge Rule. I recently purchased a home and have a $105,000 mortgage. I have approximately $2,000 in credit-card debt.

16. I have approximately $5,000 in savings.

17. Given those attributes, I am uncertain how to assess my likelihood of receiving a favorable public-charge determination when I attempt to adjust status.

18. This uncertainty makes me reluctant to accumulate any additional attributes that could be considered "negative factors" in public-charge determinations.

19. For example, I am hesitant to take out student loans or to take on other debt, which would be considered a financial liability in a public-charge determination.

20. The Public Charge Rule will also factor into my decisions about when and how to improve and furnish my new home. I am concerned that expending my disposable income in this way, rather than putting it toward savings, will reduce my assets, depriving me of a positive attribute for a public-charge determination.

21. The Public Charge Rule will also factor into my decisions about whom to marry and whether (and, if so, when) to have children, as well as how many, given the impact that those decisions have on my "household" size, as defined by the Rule.

22.  Under the Public Charge Rule, immigration officials can consider evidence beyond what is specified in the Rule in determining whether noncitizens are likely to accept public benefits in the future. Accordingly, I must consider the effect that all of my financial and lifestyle decisions might have on my ability to one day adjust status.

23.  The Public Charge Rule therefore will continue to impose harms on me by coercively altering the choices about my personal and professional life as I attempt to maximize my chances of being able to obtain LPR status in the future.

I hereby declare under penalty of perjury that the foregoing is true and correct.

DATED: September 13, 2019

*Monica Camacho*
Monica Camacho Perez