# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| CASA DE MARYLAND, INC., *et al.* <br><br> Plaintiffs, <br><br> v. <br><br> DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*, <br><br> Defendants. | No. 8:19-cv-2715-PWG |
| CITY OF GAITHERSBURG, MARYLAND, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*, <br><br> Defendants. | No. 8:19-cv-2851-PWG |

## DEFENDANTS' SUPPLEMENTAL REPLY MEMORANDUM IN SUPPORT OF THEIR CONSOLIDATED MOTION TO DISMISS

Pursuant to the Paperless Order entered by the Court on August 7, 2020, Defendants hereby file this supplemental reply memorandum in support of their consolidated Motion to Dismiss (ECF No. 116), Memorandum of Law in support thereof (ECF No. 116-1) ("Mem."), Supplemental Memorandum (ECF No. 121) ("Defs. Supp. Mem.") and in response to Plaintiffs' Consolidated Supplemental Memorandum in Opposition (ECF No. 122) ("Pls. Supp. Mem.").

**INTRODUCTION**

Plaintiffs acknowledge that the Fourth Circuit's decision dooms their contrary-to-law claims. Should they seek *en banc* review of that decision, Defendants would not object to this Court's refraining from ruling until such review has run its course.

Should the panel's decision stand or be affirmed *en banc*, this case should be dismissed. The Fourth Circuit has squarely rejected Plaintiffs central claim, that the Rule is contrary to the Immigration and Nationality Act, which is the only claim on which this Court found Plaintiffs likely to succeed. The Fourth Circuit also undermined Plaintiffs' other claims, by noting the evident thoroughness and reasonableness of the Department of Homeland Security's decision and the deferential standard under which that decision should be reviewed. More fundamentally, the Fourth Circuit suggested in no uncertain terms that the organizational Plaintiffs in *Gaithersburg* lack standing to bring their claims.

**ARGUMENT**

**I.   STANDING.**

Far from announcing a "novel and inscrutable rule," Pls. Supp. Mem. 2, the Fourth Circuit drew directly from controlling authority to hold that "voluntary 'budgetary choices' like spending money on legal action instead of research are not cognizable Article III injuries." *CASA de Maryland, Inc. v. Trump*, -- F.3d. --, No. 19-2222, 2020 WL 4664820, at *9 (4th Cir. Aug. 5, 2020) (quoting *Lane v. Holder*, 703 F.3d 668, 675 (4th Cir. 2012)). Otherwise, "organizations with merely 'abstract concern[s] with a subject that could be affected by an adjudication'" could claim standing. *Id.* (quoting *Lane*, 703 F.3d at 675 (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 (1976))). Equally "boundless" was Plaintiffs' reading of *Havens Realty*, which conflicted with "core precepts of standing doctrine." *Id.* at *10 (citing *Clapper v. Amnesty Int'l*, 568 U.S. 398, 410-14 (2013); *Simon*, 426 U.S. at 40; *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973); *Sierra Club v. Morton*, 405 U.S. 727, 739 (1972)). At every turn, the Fourth Circuit applied settled precedent to reject Plaintiffs' arguments.

The organizational Plaintiffs in *Gaithersburg* should be dismissed for the same reasons. In

1

their opposition to Defendants' motion to dismiss, Plaintiffs expressly tied together their theory of organizational standing: "*Each Organization Plaintiff* has met the prerequisites for organizational standing *by alleging that* the Public Charge Rule has perceptibly impaired its efforts to achieve its mission, thereby requiring it to devote significant resources to identify and counteract the effects of the Rule and satisfying Article III's injury-in-fact requirement." Opp'n to Mot. to Dismiss 6 (emphasis added) (quotation marks omitted). The Fourth Circuit has now rejected those arguments. Plaintiffs' recitation of the particulars of each *Gaithersburg* organizational Plaintiff, Pls. Supp. Mem. 4-5, does not shelter them from the Fourth Circuit's ruling. Nor does their attempt to analogize those Plaintiffs to their municipal counterparts. *Id.* at 5. At bottom, these Plaintiffs all claim the sorts of injury that the Fourth Circuit has deemed insufficient.

Defendants maintain that the governmental plaintiffs in these cases—namely, the City of Baltimore and the City of Gaithersburg—lack standing, too. *See* Mem. at 6-7.  The Fourth Circuit did not address those Plaintiffs, because neither of them ever moved for a preliminary injunction and thus were not appellees.[1] The fact that other circuits have upheld other governmental plaintiffs' standing, *see* Pls. Supp. Mem. 3, is hardly dispositive here, as each plaintiff's claim to standing must be assessed on its own terms. For the reasons stated by Defendants previously,[2] the governmental Plaintiffs lack standing and their claims should be dismissed.

## II.  ARBITRARY-AND-CAPRICIOUS CLAIMS.

Plaintiffs urge this Court to follow the Second Circuit's lead, calling the Fourth Circuit's ruling "inapposite." Pls. Supp. Mem. 5. But for the reasons set forth in Defendants' earlier memorandum, the Second Circuit's decision cannot be reconciled with the Fourth Circuit's reasoning, which counsels dismissal of Plaintiffs' arbitrary-and-capricious claims.

Plaintiffs distinguish between whether the Rule was *substantively* arbitrary and capricious and whether it was *procedurally* so, arguing that the Fourth Circuit addressed the former but not

---

[1] The City of Baltimore joined the *CASA* case after the preliminary injunction entered.

[2] Mem. 6-7; Reply 1.

the latter. That reflects a misreading of *Judulang v. Holder*, in which the Supreme Court said that arbitrary-and-capricious analysis under the APA is "the same" as analysis under *Chevron* step two. *Judulang v. Holder*, 565 U.S. 42, 52 & n.7 (2011). The only reason that the Court in *Judulang* chose the APA's framework was that the BIA's policy in that case was not a statutory interpretation, and thus ill-suited to *Chevron*. *Id.* at 52 n.7. The Court did not contrast a "substantive" *Chevron* test with a "procedural" APA test. *Cf. id.*

True, the Court used the term "arbitrary or capricious *in substance*" when referring to *Chevron*. *Id.* (emphasis added) (quoting *Mayo Foundation for Medical Ed. and Research v. United States,* 562 U.S. 44, 53 (2011)). But it went on, under "the same" analysis prescribed by the APA, to assess "whether the decision was based on a consideration of the relevant factors" and "the requirement that an agency provide reasoned explanation for its action"—both aspects that Plaintiffs now suggest are "procedural." *Id.* at 54 (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm*, 463 U.S. 29, 43 (1983); *FCC v. Fox Television Stations*, 556 U.S. 502, 515 (2009)).[3]

Ultimately, Plaintiffs are drawing a false distinction between "manner" and substance. Pls. Supp. Mem. 7. The APA does provide for review of procedural requirements, and empowers courts to set aside agency action taken "without observance of procedure required by law." 5 U.S.C. § 706(2)(D). By contrast, however, arbitrary-and-capricious review asks "only whether the decision was 'based on a consideration of the relevant factors and whether there has been a clear error of judgment,'" *Regents of the Univ. of Cal.*, 140 S. Ct. at 1905 (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971)). Thus, courts distinguish between whether agency action is "procedurally defective" or is "arbitrary and capricious *in substance*." *United*

---

[3] Plaintiffs' discussion of recent Supreme Court precedent conflates contrary-to-law and arbitrary-and-capricious review. The fact that "DHS had the power to rescind the Deferred Action for Childhood Arrivals (DACA) program" is beside the point, as it does not bear on whether DHS's decision to do so was arbitrary and capricious. Pls. Supp. Mem. 7. Similarly, whether the 2020 census was "substantively invalid" was a reference to various arguments—under the Enumeration Clause and the Census Act—why the decision was contrary to law, apart from whether it was arbitrary and capricious. *Id.* (quoting *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2576 (2019)).

*Sates v. Mead Corp.*, 533 U.S. 218, 227 (2001) (emphasis added).[4] Just as with *Chevron* step two, the substance—not the process—is the focus of arbitrary-and-capricious review. And in this case, the Fourth Circuit rendered several holdings under *Chevron* step two that bear on Plaintiffs' arbitrary-and-capricious claims. *See generally* Defs. Supp. Mem. 4-5. Those are more than enough, under the "narrow standard of review" applicable to such claims, *see DHS*, 140 S. Ct. at 1905 (quoting *FCC*, 556 U.S. at 513), to dismiss them.

Nonetheless, Plaintiffs insist that the Fourth Circuit did not consider four discrete topics. Pls. Supp. Mem. 7. But those minor points can hardly surmount the Fourth Circuit's overriding observation that the "process that DHS followed in promulgating the Rule was both thorough and procedurally sound." *CASA*, 2020 WL 4664820, at *5. The Fourth Circuit also specifically reasoned that "[m]any of the changes implemented [following notice and comment] addressed specific comments DHS had received," and noted that DHS's "detailed responses spanned nearly 200 pages of the Federal Register." *Id*. The Court of Appeals added that "in formulating the Rule's durationally specific definition of 'public charge,' DHS did not simply pluck the operative time period out of thin air. Instead, it relied on several empirical analyses regarding patterns of welfare use in the United States, including studies conducted by the Census Bureau, the Department of Health and Human Services, and DHS itself." *Id.* The Fourth Circuit impliedly rejected Plaintiffs' "de minimis" argument by noting that their proffered "'floor' of benefits below which no one may be deemed a public charge is simply nowhere in the text itself." *Id.* at *20. Finally, the Fourth Circuit also noted that the Supreme Court has recently stayed injunctions in which the lower courts

---

[4] *See also Paralyzed Veterans of Am. v. U.S. Dep't of Transp.*, 909 F.3d 438, 440 (D.C. Cir. 2018) ("They contended that the rule was procedurally infirm because it was issued without notice-and-comment procedures and it was substantively invalid because it was arbitrary and capricious."); *Comite' De Apoyo v. Perez*, 774 F.3d 173, 189 (3d Cir. 2014) ("We next conclude that in addition to being procedurally flawed, Section 655.10(f) is substantively arbitrary, and, thus by adopting it, DOL violated 5 U.S.C. § 706(2)(A)."); *WildEarth Guardians v. EPA*, 728 F.3d 1075, 1081 (10th Cir. 2013) ("Our review of the EPA's order is governed by the Administrative Procedure Act, and we accordingly will not set aside the agency's decision unless it is procedurally defective, arbitrary or capricious in substance, or manifestly contrary to the statute.") (quotation marks omitted); *accord Wisconsin v. EPA*, 266 F.3d 741, 745 (7th Cir. 2001) (citing *Mead*, 533 U.S. at 227).

had found that the Rule was arbitrary and capricious, which "would have been improbable if not impossible had the government, as the stay applicant, not made 'a strong showing that it was likely to succeed on the merits.'" *See* Defs. Supp. Mem. 5 (collecting cases); *CASA*, 2020 WL 4664820, at *1 (collecting cases).

The bottom line is that the Fourth Circuit made several rulings that are inconsistent with the theories underlying Plaintiffs' arbitrary-and-capricious claims. The Court should decline Plaintiffs' invitation to disregard those rulings as "inapposite." For the reasons Defendants have stated previously,[5] as reinforced by the Fourth Circuit, the Rule is neither arbitrary nor capricious.

### III. EQUAL-PROTECTION CLAIMS.

Plaintiffs argue that the Fourth Circuit's ruling has "no bearing" on their equal protection claims, even though the Court of Appeals clarified the lens through which those claims should be viewed. *Compare* Opp'n to Mot. to Dismiss 35 (arguing a more deferential standard "does not apply to equal protection claims like Plaintiffs' that concern residents who have lived in the United States for years and have established deep connections to this country") (alterations and quotation marks omitted) *with CASA*, 2020 WL 4664820, at *19 ("[T]he judicial role in overseeing the political branches' exercise of the federal immigration power is circumscribed."); *CASA*, 2020 WL 4664820, at *19 ("To whatever extent the federal courts are empowered to review how the executive discharges this duty, the separation of powers demands careful deference from the judiciary and intervention, if at all, only in truly exceptional situations. This is not one of them."). The Fourth Circuit's determination of the appropriate standard of review plainly was not mere dicta, as Plaintiffs insist.

For the reasons Defendants have stated previously,[6] and particularly since the Fourth Circuit has affirmed that heightened judicial deference is required in this case, Plaintiffs' equal-protection claims should be dismissed.

---

[5] *See* Mem. 13-22; Reply 7-15; Defs. Supp. Mem. 3-5.

[6] *See* Mem. 24-27; Reply 18-20; Defs. Supp. Mem. 5-6.

| | |
|---|---|
| Dated: September 14, 2020 | Respectfully submitted,<br><br>JEFFREY BOSSERT CLARK<br>Acting Assistant Attorney General<br><br>ALEXANDER K. HAAS<br>Branch Director<br><br>*/s/ Jason C. Lynch*<br>JOSHUA M. KOLSKY<br>KERI L. BERMAN<br>KUNTAL V. CHOLERA<br>JASON C. LYNCH (D.C. Bar. No. 1016319)<br>Trial Attorneys<br>U.S. Department of Justice<br>Civil Division, Federal Programs Branch<br>Washington, D.C. 20530<br>Tel: (202) 514-1359 / Fax: (202) 616-8460<br>Email: Jason.Lynch@usdoj.gov<br><br>*Attorneys for Defendants* |